UTILITY WORKERS UNION OF      )
AMERICA, LOCAL 335,           )
                              )
            Plaintiff,        )
                              )
        v.                    )        No. 4:09 CV 1875 DDN
                              )
MISSOURI-AMERICAN WATER       )
COMPANY,                      )
            Defendant.        )

## MEMORANDUM

This action is before the court on the cross-motions of plaintiff Utility Workers Union of America, Local 335, for summary judgment (Doc. 45) and of defendant Missouri-American Water Company for summary judgment (Doc. 52).

## I.  BACKGROUND

On November 13, 2009, plaintiff Utility Workers Union of America, Local 335 (Union) commenced this action against Missouri-American Water Company (Company) to confirm rights arising out of a June 15, 2009 arbitration award and to compel the Company to return for further arbitration.  In his June 15, 2009 award, arbitrator Josef Rohlik (Arbitrator) found that the Company substantially changed the duties of the Distribution Load Control Center (DLCC) Operators job classification and directed the Company and the Union to negotiate the amount of the resulting wage change for those employees, as set forth in their collective bargaining agreement (CBA).  After the Company and the Union negotiated but were unable to reach an agreement on the wages, the Union sought to have the Arbitrator determine the amount of the wage.  The Company refused to submit this matter to arbitration.  On September 28, 2009, the Arbitrator issued a letter stating that the CBA gave him authority to arbitrate the amount of the DLCC Operators wage. Thereafter, the Union brought this judicial action against the Company.

In Count I of its first amended complaint, the Union seeks a declaratory judgment confirming the liability portion of the arbitration award.  In Count II, the Union seeks an order that the Company participate in arbitration proceedings to determine the amount of the wage for the DLCC Operator position.

In its counterclaim, the Company seeks to dismiss the Arbitrator's decision and September 28, 2009 letter, to the extent that they authorize the Arbitrator to decide the amount of the DLCC Operator wage.


## II. MOTIONS FOR SUMMARY JUDGMENT

The Union and the Company have each moved for summary judgment. In its motion, the Union seeks summary judgment on Count II of its amended complaint, arguing that the Arbitrator has the authority to determine the amount of the wage. In its motion, the Company argues that the Arbitrator did not have the authority to retain jurisdiction to determine the amount of the wage.

The Union argues that the court has the power to remand the arbitration proceeding to the Arbitrator because the award is incomplete, as the parties were unable to agree on the amount of the wage. The Union further argues that Section 3.20 of the CBA *implicitly* authorizes the Arbitrator to determine the amount of the wage.

The Union also argues that the Company was on notice that the Arbitrator retained jurisdiction to determine the amount of the wage in the event that the parties could not come to an agreement. Further, the Union argues that the issues presented to the Arbitrator included determining what remedy to fashion, and thus that the Company consented to the Arbitrator's jurisdiction.

The Company argues that the CBA alone sets the scope of the Arbitrator's authority, and that the CBA does not permit the Arbitrator to decide the amount of a wage. The Company contends that Section 3.20 only requires it to negotiate with the Union over wages. In addition, the Company points to Section 3.01(*l*), which exempts negotiations over wages from the grievance procedure.

The Company also argues that it did not consent to the Arbitrator's jurisdiction to determine the amount of the wage, but only consented to the Arbitrator retaining jurisdiction to ensure that negotiations ensued in good faith. The Company contends that Section 3.20 has never been interpreted to grant authority to an arbitrator to determine the amount of a wage. Further, the Company argues that forcing it to return to arbitration would be against public policy, and even if Section 3.20 granted the Arbitrator authority to determine the amount of the wage,

the grant of authority was not "clear and unmistakable" as required by law.

The Union replies that there is a presumption of arbitrability in the CBA because the CBA contains an arbitration clause, and that presumption has not been overcome. The Union argues that Section 3.20 grants the Arbitrator authority to determine the amount of the wage, and that Section 3.01(*l*) only prohibits negotiation of wages through arbitration – not actual arbitration of wages through arbitration (e.g. the amount of the wage determined by an arbitrator).

The Union also argues that prior arbitral interpretations of Section 3.20 are relevant in resolving future disputes. The Union further argues that the Company consented to the Arbitrator determining the amount of the wage, when it did not object to the Union's request for continued jurisdiction at the arbitration hearing.

### III. STATEMENT OF UNDISPUTED FACTS

1. The Union and the Company have entered collective bargaining agreements at least since November 1, 2002. The dispute between the Union and the Company regarding the classification of the Company's Distribution Load Control Center (DLCC) Operators occurred in 2004. In 2006 the Company and the Union entered a new CBA. However, the relevant provisions of the parties' 2002 and 2006 CBAs, which are quoted and referred to below, are identical.

2. Section 3.01 of the CBA establishes a procedure for resolving grievances:

3.01 GRIEVANCE PROCEDURE

. . .

(b) Should any dispute or grievance arise between the Company and its employees with regard to the application of the terms of this Agreement because of an act by the Company or Union, such dispute or grievance shall be settled in the following manner:

[Next follows a four-step procedure for presenting disputes for settlement by the Company and the Union. Step 4 ends with the selection of an arbitrator.]

. . .

(j)  Settlement provisions and agreements pertaining to past grievances shall influence the settlement of grievances occurring during the period of this Agreement, unless otherwise provided for in this Agreement.

(*l*)  The grievance procedure will not be used for the purpose of negotiating changes in wages or working conditions.

(Doc. 47-2 at 12-14.)

3.    The CBA also provides that if a new job classification is created or if the qualifications of an existing job are substantially revised, the Company must negotiate with the Union to determine the proper wage.  Specifically, Section 3.20 of the CBA provides:

[1][1]  3.20    JOB STUDY AND JOB SECURITY: (a) Job Study: The job descriptions, as well as the Line of Promotion charts which have been adopted by the parties, shall remain in effect for the duration of this Agreement.  The Company will negotiate with the Union the proper wages and rate ranges for newly created job classifications or for substantially revised job duties or job qualifications of existing classifications. The Company will notify the Union of its intention to create new job classifications or to substantially revise existing classifications at least thirty (30) days prior to the beginning of work in such new or revised classifications.

[2]  It is understood that the Job Descriptions, as well as the functions and specifications thereunder, constitute the total duties of a classification as of the signing of this Agreement.  Any qualitative and quantitative additions to such functions and specifications thereafter may be regarded as a change, although not necessarily a substantial and/or material change, in the job duties or job qualifications of existing classifications.

[3]  In the event the parties fail to agree as to the proper description or evaluation of a new job classification, or for materially revised job duties or job qualifications, either of the parties may process the matter through the grievance procedure, including arbitration.

[4]  In determining whether or not job duties or job qualifications have been so substantially revised as to warrant a change in wage rates under the provisions of this Section, only those changes in the job duties or job qualifications can be considered which have occurred subsequent to the most recent date on which wages for such

_____

[1]For ease of location, the court has enumerated the paragraphs of Section 3.20 and refers to these paragraphs below by this enumeration.

- 4 -

classifications were agreed to by the Company and the Union,
or established by arbitration, and before the date upon which
the Union requested wage consideration under this Section.

[5]   It is further expressly agreed between the parties that if
a question concerning substantially revised job duties or job
qualifications is processed as a grievance and taken to
arbitration and while such grievance is pending, a new
collective bargaining agreement is negotiated by the parties,
then in such event the arbitration panel shall not consider
any changes in the affected classification which have
occurred since the date of such intervening Agreement, and
shall not award any retroactive pay for the period subsequent
to such intervening Agreement.

(Id.)

    4.    DLCC Operator is a job classification within the meaning of
the CBA.  When responsibility for water service to St. Charles County
was given to the DLCC Operators, the Company did not recognize a
material change in the DLCC Operators' duties under the CBA.  The Union
filed a grievance, alleging that the Company violated the CBA.  The
parties were unable to resolve the grievance, and submitted the matter
for arbitration.

    5.    On February 18, 2009, an arbitration hearing was held, and
the parties submitted briefs through counsel to the Arbitrator.  The
Union and the Company submitted the dispute to the Arbitrator in the
following language:

    Pursuant to Section 3.20 of the parties' collective
    bargaining agreement, was there a material or substantial
    change in the job classification of Distribution Load Control
    Center Operator in or around November 2004 as a result of
    added responsibilities for work related to St. Charles
    County?  If so, what remedy is appropriate?

    6.    During the arbitration hearing, the Union requested that the
Arbitrator find that there was a substantial change in the DLCC
Operators job duties, that the Arbitrator order the parties to negotiate
the appropriate wage, and that the Arbitrator retain jurisdiction over
the matter, stating:

    In conclusion, Mr. Arbitrator, we submit that the evidence
    will show that the additional St. Charles responsibilities,
    which were given to the DLCC operators in November 2004,
    resulted in a material or substantial change in the DLCC
    operator job classification and that a wage increase is
    required.  We ask you to so hold and that you direct the
    parties to negotiate over this wage increase with a retention
    of jurisdiction in the event the parties are unable to reach
    agreement.

- 5 -

The Company did not object to this statement by Union counsel.

      7.    On or about June 15, 2009, the Arbitrator issued his 13-page decision and award, in which he found in favor of the Union.  The Arbitrator concluded with the following award:

> 1.  The grievance is sustained.  The Company must enter into Section 3.20 negotiations.
>
> 2.  The arbitrator retains jurisdiction as requested by the Union for 6 months from the date of this award.

      8.    After the Arbitrator's June 15, 2009, decision and award, the Union and the Company negotiated the amount of the wage, but were unable to agree on a wage.

      9.    On September 17, 2009 the Union notified the Company of its intent to arbitrate the amount of the DLCC Operator wage.  However, the Company refused to participate in the arbitration of that matter.

      10.    On September 28, 2009, the Arbitrator issued the following letter to the Union and the Company:

> Retention of jurisdiction for the purpose of the quantification of damages phase of the award is a standard arbitration practice, and a non-controversial one.  In addition, given the solid basis for the retention of jurisdiction, the failure to object to the request for retention of jurisdiction is acquiescence which results in a binding obligation.  Among other things, the Dunsford article provides a solid policy rationale for the retention of jurisdiction.
>
> Unless the Company files a petition to set aside the award in federal court, I will conduct a hearing and damages pursuant to my award.  It may be that a meeting with both counsel will facilitate your negotiations.
>
> I expect that you will contact me about a mutually convenient time for the hearing or meeting.

      11.    On December 22, 2009, the Company filed its counterclaim in this action.

## DISCUSSION

### A.    Statute of Limitations Defense to Company's Counterclaim

      The Union argues that the Company's counterclaim to vacate the arbitration award was filed in violation of the 90-day Missouri statute of limitations for challenging arbitration awards.  The Union argues

that the limitations period began to run either on June 15, 2009 (the date of the arbitration award) or September 17, 2009 (the date on which the Union notified the Company of its intent to arbitrate the amount of the DLCC Operator wage). Thus, whichever 90-day limitation period applies, it was exceeded by the Company's filing of its counterclaim in this judicial proceeding on December 22, 2009.

The Company responds that its counterclaim is timely because the deadline did not start to run until September 28, 2009, when the Arbitrator issued his letter which stated that he had authority under the CBA to arbitrate the subject wage. The Company argues that the Arbitrator's September 28, 2009 letter was a clarification letter, which for the first time expressed his authority to determine the amount of the wage.

The Union replies that no exception applies because the Company was aware that the Arbitrator retained jurisdiction for the purpose of determining the amount of the wage if the parties could not agree to an amount. The Union argues that the Arbitrator's grant of the Union's request to retain jurisdiction on June 15, 2009 was clear, thus starting the 90-day period. The Union also points to Section 3.20 of the CBA, which the Union argues impliedly grants the Arbitrator authority to determine the amount of the wage. The Union further argues that the Company should be precluded from arguing that it was not aware the arbitrator retained the authority to determine the amount of the wage because an arbitrator previously found Section 3.20 as granting him such authority. Finally, the Union argues that the Company was aware of and agreed to the Arbitrator's retention of jurisdiction to determine the amount of the wage if the parties could not.

"A suit to vacate an award under § 301 is subject to the applicable state statute of limitations." Turner v. United Steelworkers of America, Local 812, 581 F.3d 672, 675 (8th Cir. 2009). Missouri law, which echoes the Uniform Arbitration Act, 9 U.S.C. § 12, requires that a motion to vacate an arbitration award "be made within ninety days after delivery of a copy of the award to the applicant, except that, if predicated upon corruption, fraud, or other undue means, it shall be made within ninety days after such grounds are known or should have been known." Mo. Rev. Stat. § 435.405(2) (2006). Failure to comply with the deadline "jusfie[s] the dismissal of the action." Witt v. Reinholdt & Gardner, 587 F.2d 383, 384 (8th Cir. 1978) (per curiam).

The 90-day deadline is equally applicable to a counterclaim to vacate an arbitrator's award. <u>See</u> <u>Sheet Metal Workers Int'l Ass'n.,</u> <u>Local Union No. 36 v. Systemaire, Inc.</u>, 241 F.3d 972, 975-76 (8th Cir. 2001); <u>Stedman v. Great American Ins. Co.</u>, No. 4:06-cv-101, 2007 WL 1040367, at *5-7 (D.N.D. Apr. 3, 2007).

A 90-day filing deadline may begin to run on the later of either the initial award or the arbitrator's later clarification of the award. <u>Domino Group, Inc. v. Charlie Parker Mem'l Found.</u>, 985 F.2d 417, 419 (8th Cir. 1993).

The issue before the court is whether the Arbitrator's September 28, 2009 letter was a clarification of the June 15, 2009 award regarding the arbitrator's authority to decide the DLCC Operators wage following the parties inability to reach a settlement over it. Such a post-award document can be considered a clarification of an award, if the original award is ambiguous and the later document settles or clarifies the ambiguity. <u>Id.</u> at 420 ("An ambiguous award should be remanded to the arbitrators so that the court will know exactly what it is being asked to enforce", quoting <u>Americas Ins. Co. v. Seagull Compania Naviera</u>, 774 F.2d 64, 67 (2nd Cir. 1985)).

The court concludes that the Arbitrator's award was not ambiguous on the issue of whether or not the Arbitrator had the authority under the CBA to decide the amount of the DLCC Operators wage if the Company and the Union could not agree on the wage following the issuance of the Arbitrator's award. The issue that the Union and the Company submitted to the Arbitrator to decide had two components. The first component was whether there was "a material or substantial change in the job classification of distribution load control center operator in or around November 2004 as a result of added responsibilities for work related to St. Charles County." (Doc. 24-2, Ex. 1 at 1.) The second component of the issue initially presented to the Arbitrator was, if the first component of the issue was decided by the Arbitrator in the affirmative, "what remedy is appropriate?" (<u>Id.</u>)

The parties do not dispute that the Arbitrator decided the first component of the issue in the Union's favor. He found that the change in the DLCC Operators duties was "quantitative," "substantial or material" under the § 3.20 of the CBA. The Arbitrator then determined that "[t]he Company must enter into Section 3.20 negotiations." (<u>Id.</u>) Then, on the second component of the submitted issue, the Arbitrator

stated, "The arbitrator retains jurisdiction **as requested by the Union** for 6 months from the date of the award." (Id.)(emphasis added.)

During the arbitration hearing counsel for the Union stated:

> In conclusion, Mr. Arbitrator, we submit that the evidence will show that the additional St. Charles responsibilities, which were given to the DLCC operators in November 2004, resulted in a material or substantial change in the DLCC operator job classification **and that a wage increase is required. We ask you to so hold and that you direct the parties to negotiate over this wage increase with a retention of jurisdiction in the event the parties are unable to reach agreement.**

(Doc. 42-2 at 2.)(emphasis added.) The award document issued by the Arbitrator on June 15, 2009, incorporated this request that the Arbitrator retain jurisdiction to decide the amount of the DLCC Operators wage if the Union and the Company could not do so.

The parties dispute whether the June 15, 2009, document issued by the Arbitrator was a final award subject to being challenged in court, given the fact that it also directed the parties to negotiate a wage for the DLCC Operators. As the Union argues, the Arbitrator's September 28 letter informed the parties of the Arbitrator's intention to schedule a hearing to determine the amount of the wage, pursuant to the Arbitrator's retention of jurisdiction in the arbitration award. (Doc. 9-3, Ex. C.) At most the September letter was an elaboration of what was stated in the June award document.

The Company cites <u>Turner v. United Steelworkers of America, Local 812</u>, 581 F.3d 672 (8th Cir. 2009), and <u>Local 2322, Int'l Bhd. of Elec. Workers v. Verizon New England, Inc.</u>, 464 F.3d 93 (1st Cir. 2006), in arguing that the filing deadline did not begin until the Arbitrator issued his September 28, 2009 letter. In <u>Turner</u>, the Eighth Circuit explained that a party does not necessarily waive its defenses by failing to timely file a motion to vacate if the opposing party sought

to "'confirm' a remedy not mentioned in the award."[2]  <u>Turner</u>, 581 F.3d
at 676.

Similarly, in <u>Verizon New England</u>, the arbitrator clarified his
award.  <u>Verizon New England</u>, 464 F.3d at 95.  There, the arbitration
award stated that an employee's suspension "was not for just cause.  The
day shall be converted to leave without pay and the dispute removed from
his file."  <u>Id.</u>  The arbitrator later clarified his award as requiring
the employer to pay back pay.  <u>Id.</u> at 96.  The First Circuit explained
that the filing deadline did not begin to run at the time of the initial
arbitration award because "the [initial arbitration] award did not
mention back pay, and the first clear statement that the arbitrator
wanted [the employer] to provide back pay came only [in the arbitrator's
subsequent clarification letter]."  <u>Id.</u> at 97.

In both these cases, the courts provided greater latitude for
compliance because the moving party could not have been expected to
challenge the initial award.  Here, however, the Arbitrator's retention
of jurisdiction was stated in the award and the award clearly referenced
the purpose of retaining jurisdiction, which was contained in the
Union's request to the Arbitrator.  The Union requested that the

_____

[2]Failure to timely file a motion to vacate an award not only bars
making such a motion, but also "waive[s] any defenses to confirmation
that might be asserted in a timely motion to vacate."  <u>Domino Group</u>, 985
F.2d at 419.  The Eighth Circuit has articulated three alternatives
which a party may employ to retain its defenses, even though its motion
to vacate must be dismissed.  <u>Franklin Elec. Co. v. Int'l Union, United</u>
<u>Auto. Aerospace and Agr. Implement Workers of America</u>, 886 F.2d 188,
191-92 (8th Cir. 1989); <u>Local Union No. 36, Sheet Metal Workers' Intern.</u>
<u>Ass'n, v. Atlas Air Conditioning Co.</u>, 926 F.2d 770, 771-72 (8th Cir.
1991).  First, a party can "object[] to the arbitrator's authority,
refuse[] to argue the arbitrability issue, and proceed[] to the merits
of the grievance."  <u>Atlas Air Conditioning</u>, 926 F.2d at 771.  Second,
a party can "[seek] declaratory or injunctive relief prior to the
commencement of arbitration."  <u>Id.</u> at 772.  Third, a party "[can]
notif[y] the [Arbitrator] that it refuse[s] to arbitrate altogether."
<u>Id.</u>  The Union does not argue that the Company has surrendered its
defense.  (Docs. 14, 24.)

Although the Company's motion to vacate was untimely and thus must
be denied, the Company is not deprived of its defenses to the Union's
enforcement of the arbitration award.  The Company brought its
counterclaim prior to any additional arbitration in an attempt to
foreclose additional arbitration, (Doc. 9), and the Company objected to
additional arbitration in its September 18, 2009 letter.  (Doc. 9-2, Ex.
B.)  Therefore, the Company preserved its defenses to the Union's suit
to enforce the arbitration award.

Arbitrator retain jurisdiction while the parties negotiated so that the Arbitrator could exercise jurisdiction in the event the parties could not reach an agreement. (Doc. 24-1, Ratterman Aff. at ¶ 3.)

In sum, because the Arbitrator expressly retained jurisdiction to determine the amount of the wage in his June 15, 2009 arbitration award, the 90-day filing deadline began to run on June 15, 2009.[3] The Company's December 22, 2009 counterclaim was not raised until well after the 90-day filing deadline expired.

The Company's counterclaim was untimely and will be dismissed.


## B. Count II of Amended Complaint
## Power to Determine Arbitrability

As an initial matter, "[w]hether a collective bargaining agreement requires the parties to arbitrate a particular grievance is undeniably an issue for judicial determination." International Bhd. of Elec. Workers v. GKN Aerospace N. Am., Inc., 431 F.3d 624, 627 (8th Cir. 2005) (internal quotations omitted). In making this determination, a court must avoid "rul[ing] on the potential merits of the underlying claims." Id. (citations omitted).

The Union contends that this court should not attempt to interpret Section 3.20 to determine the scope of the Arbitrator's authority because doing so would be ruling on the merits of the Union's claims. (Doc. 53 at 2-3). The Union argues that, instead this court should remand the issue to the arbitrator to determine his scope of authority. (Id.) But, "a court cannot avoid its duty to decide whether a dispute is arbitrable merely because doing so will require the court to interpret a provision of a bargaining agreement." Crown Cork & Seal Co.,

---

[3]The Company also argues that the Union's September 17, 2009 letter did not begin the filing deadline because "[a] party cannot unilaterally modify or expand an arbitral award simply by stating its own interpretation of the award" and because "the relevant date [on which the filing deadline begins] is the date on which the clarification or modification was received by the challenging party." (Doc. 19 at n.2.) However, the Union did not modify or expand the award in its September 17, 2009 letter, but rather, sought to proceed to the arbitration hearing pursuant to the arbitrator's award. (Doc. 9 at ¶ 14.) In addition, neither the Union's September 17, 2009 letter nor the Arbitrator's September 28, 2009 letter was a clarification or modification letter.

Inc. v. Int'l Assoc. of Machinists & Aerospace Workers, 501 F.3d 912, 917 (8th Cir. 2007) (internal quotations omitted).

Accordingly, it is this court's judicial responsibility to determine the scope of arbitrability of the parties' grievance. See GKN Aerospace, 431 F.3d at 628.

**Power of the Arbitrator to Retain Jurisdiction After Award**

The parties generally agree that an arbitrator may retain jurisdiction after issuing an award. (Docs. 46 at 5 n.1, 51 at 8 n.4.) The Union describes arbitral retention of jurisdiction as "uncontroversial," (Doc. 46 at 5 n.1), while the Company contends arbitral retention of jurisdiction is appropriate in "some scenarios," such as to determine the time period to apply to a wage change, or to ensure that parties bargain in good faith. (Doc. 51 at 8 n.4.)

The doctrine of *functus officio*,[4] invoked by the Company, traditionally prohibited an arbitrator from revisiting a final award after the award has been issued. Elkouri & Elkouri, How Arbitration Works 325 (6th ed. 2003). However, "[t]oday, riddled with exceptions, [*functus officio*] is hanging on by its fingernails and whether it can even be said to exist in labor arbitration is uncertain." Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union v. Excelsior Foundry Co., 56 F.3d 844, 846 (7th Cir. 1995).

One exception to *functus officio* is the ability of the arbitrator to retain jurisdiction to finish an incomplete award. Elkouri, How Arbitration Works 328. This exception applies "where the award does not adjudicate an issue that has been submitted, because, if an arbitrator has not decided an issue, it remains open for adjudication." Id. at 329. If the Arbitrator had the authority to determine the amount of the wage and the Arbitrator retained jurisdiction for that purpose, then the Union is correct that the Arbitrator's award is incomplete. (Doc. 46 at 5-7). "Arbitrators frequently retain limited jurisdiction to resolve issues related to the implementation of a remedy ordered by the arbitrator, both at the request of the parties and sua sponte." Elkouri & Elkouri, How Arbitration Works 138 (6th ed. Supp. 2008). "Retention

_____

[4]*Functus officio* is Latin for "having performed his office," and stands for the proposition that once an official has performed his duty, he has no further authority. Black's Law Dictionary 743 (9th ed. 2009).

of jurisdiction over an award is not forbidden by law, as it is clear by the fact that courts routinely send awards back to the arbitrator who issued the award. . . ." Id. at 139. "[T]here is an abundance of case law . . . that recognizes the propriety of an arbitrator retaining jurisdiction over the remedy portion of an award. . . . The case law on this issue is clear . . . ." Cuna Mut. Ins. Soc. v. Office and Prof'l Emps. Int'l Union, Local 39, 443 F.3d 556, 564-65 (7th Cir. 2006) (affirming Rule 11 sanctions against counsel who challenged an arbitrator's retention of jurisdiction to address damages issues). See also Scheideman v. W. Des Moines Cmty. Sch. Dist., 989 F.2d 286, 287 (8th Cir. 1993) (arbitrator retained jurisdiction "over future disputes in the matter" and thus had the power to award back pay); Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Local 24, 357 F.3d 546, 554 (6th Cir. 2004) (arbitrator retained jurisdiction over any disputes relating to "the implementation of [the] remedy"); Dean Foods Co. v. United Steel Workers of America, 911 F.Supp. 1116, 1127-28 (N.D. Ind. 1995) (explaining that "there is a wealth of case law . . . recognizing the propriety of an arbitrator retaining jurisdiction over the remedy portion of an award"); John E. Dunsford, The Case for Retention of Remedial Jurisdiction in Labor Arbitration Awards, 31 Ga. L. Rev. 201, 227-68 (1996) (discussing the arguments surrounding and the permissive scope of post-award arbitral retention of jurisdiction).

In sum, the Arbitrator's retention of jurisdiction is not facially impermissible, and as discussed below, the appropriateness of the retention depends on the scope of authority granted to the Arbitrator by the parties through the CBA.

**The Scope of the Arbitrator's Authority: CBA Sections 3.01 and 3.20**

"Arbitration is a creature of contract," Lebanon Chemical Corp. v. United Farmers Plant Food, Inc., 179 F.3d 1095, 1099 (8th Cir. 1999), and as such, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). Consequently, an arbitrator cannot exercise authority beyond the extent to which the parties consented in their contractual agreement. United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1970). Thus, "judicial review of an arbitration award is limited to deciding whether the award draws its essence from the collective

bargaining agreement." <u>United Food and Commercial Workers, Local No.</u>
<u>222 v. Iowa Beef Processors, Inc.</u>, 683 F.2d 283, 285 (8th Cir. 1982).

The Union argues that Section 3.20 *implicitly* grants the Arbitrator
jurisdiction to determine the amount of a wage in the event that the
parties do not come to an agreement. (Docs. 46 at 7, 53 at 3-5.)  The
Union points to portions of the fourth and fifth paragraphs in Section
3.20 in support of its argument.  (<u>Id.</u>)

According to the Union, the fourth paragraph states in the
disjunctive that wages may be agreed upon by the parties or "established
by arbitration," and the fifth paragraph implies arbitral determination
of wages because it contemplates the ability of an arbitrator to award
back pay.  According to the Company, the plain meaning of Section 3.20,
when read as a whole and in conjunction with other CBA provisions, does
not grant an arbitrator such authority.  (Doc. 51 at 7.)

Interpreting these provisions is further complicated, however, by
Section 3.01(b), which grants broad arbitral authority, and Section
3.01(*l*), which curtails some arbitral authority.  (Doc. 47-2 at 12-13.)

"In interpreting a collective bargaining agreement . . . [the
court] must construe the contract as a whole . . . and read the terms
of the agreement in their context."  <u>Sheet Metal Workers Int'l Ass'n,</u>
<u>v. Lozier Corp.</u>, 255 F.3d 549, 551 (8th Cir. 2001) (internal citations
omitted).  Conflicting CBA provisions must be harmonized to the extent
possible.  <u>Bureau of Engraving, Inc. v. Graphic Communication Int'l</u>
<u>Union, Local 1B</u>, 284 F.3d 821, 825 (8th Cir. 2002).  <u>See also</u> <u>Engelhard</u>
<u>Corp. v. NLRB</u>, 437 F.3d 374, 381 (3d Cir. 2006).

When viewed in isolation, Section 3.20 does not *expressly* grant
arbitral authority to determine wages.  Section 3.20 does, however,
*imply* arbitral authority to determine wages.  The fourth paragraph of
Section 3.20 sets the dates that may be considered "[i]n determining
whether or not job duties or job qualifications have been so
substantially revised as to warrant a change in wage rates." (Doc. 47-2
at 27.)  This determination is a condition precedent to determining the
actual amount of the wage.  Even though this section relates to the
first step in the Section 3.20 mechanism, this section implies that
wages can be set by arbitration.  The Company argues that the intent of
this section was not to confer arbitral authority, (Doc. 51 at 7-10;
Doc. 54 at 6-10), but the plain meaning of the section nonetheless

reveals an implied reference to existing arbitral authority.  Portell
v. AmeriCold Logistics, LLC, 571 F.3d 822, 824 (8th Cir. 2009).

Paragraph five of Section 3.20 also contains an express reference
to arbitral authority to award back pay.  As a whole, paragraph five
contemplates the situation where a new CBA is negotiated while a
grievance is pending.  More specifically, paragraph five prohibits an
arbitrator from considering the new CBA in deciding any pending
grievances.[5]  Paragraph five also prevents an arbitrator from awarding
retroactive pay for the period after any intervening CBAs.  The only
reference in this paragraph to arbitral authority related to wages is
a prohibition, not a grant, of authority.  This prohibition implies that
an arbitrator has some authority in determining wages - otherwise, as
a practical matter, this limitation would not be necessary.

The Company notes that paragraph three of Section 3.20 defines the
scope of arbitral authority over changes in job duties.  This explicit
grant of arbitral authority provides jurisdiction to the arbitrator to
determine if a substantial change in job duties has occurred.  This is
a condition precedent to negotiating a wage change under the CBA in
these circumstances, and is independent of determining the amount of the
wage.  Paragraph three does not, however, speak at all to the second
step in the process: determining the amount of the wage.  Although the
absence of a provision granting arbitral authority to make this
determination is somewhat telling, it is not dispositive of arbitral
authority to determine the amount of the wage.

As noted above, Section 3.20 must be construed consistently with
Section 3.01(b)'s general grant of arbitral authority and Section
3.01(l)'s specific arbitral restrictions. See Lozier, 255 F.3d at 551.
These conflicting CBA provisions cannot be read in harmony.

Because the CBA, as a whole, is ambiguous as to whether the
Arbitrator has authority to determine the amount of the wage, the
Arbitrator's interpretation - that he does have jurisdiction over the
amount of the wage - must be upheld.  See Builders Ass'n of Kansas City
v. Greater Kansas City Laborers District Council, 326 F.2d 867, 869 (8th
Cir. 1964) (" 'In the absence of any express provision excluding a

---

[5]As discussed previously, Section 3.20 provides for arbitral
determination of whether job duties have substantially changed, thus
necessitating wage negotiations between the parties.

particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad.' ") (quoting <u>Warrior & Gulf</u>, 363 U.S. at 581); <u>Franklin Elec. Co.</u>, 886 F.2d 188, 194 (8th Cir. 1989) ("Because the record discloses there was some ambiguity, we cannot say the arbitrator exceeded his authority in resolving those ambiguities in favor of granting insurance benefits to the laid off employees."); <u>U.S. Life Ins. Co. v. Superior Nat. Ins. Co.</u>, 591 F.3d 1167, 1178 (9th Cir. 2010) ("The arbitrator's interpretation of the scope of the issue must be upheld so long as it is rationally derived from the parties' submission."); <u>Contico Int'l, Inc. v. Local 160, Leather Goods, Plastics and Novelty Workers</u>, 738 F. Supp. 1262, 1267 (E.D. Mo. 1990) ("If the agreement is ambiguous and susceptible of more than one interpretation, the arbitrator's construction of that ambiguity is binding on the parties and the courts."); <u>Certain Underwriters at Lloyd's London v. Ashland, Inc.</u>, 967 A.2d 166, 174 n.8 (D.C. 2009) ("'[T]he arbitrator's interpretation of the scope of his powers is entitled to the same level of deference as his determination on the merits.'") (quoting <u>Schoenduve Corp. v. Lucent Techs., Inc.</u>, 442 F.3d 727, 733 (9th Cir. 2006)).

The Company argues that under <u>Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752</u>, 989 F.2d 1077 (9th Cir. 1993), the Arbitrator's retention of jurisdiction to determine the amount of the wage was improper.   In <u>Phoenix Newspapers</u>, the Ninth Circuit found that an arbitrator exceeded his authority when, after he ordered the company and the union to negotiate a new wage, he retained jurisdiction to determine the amount of the new wage in the event the parties could not come to an agreement.   <u>Id.</u> at 1079.  The Ninth Circuit based its holding on the bargaining history of the parties, and found that the parties would not have included a mandatory wage change provision in their contract.   <u>Id.</u> at 1082.  Specifically, the court explained that the company "vigorously fought the various attempts of the Union to make manning practices binding," and the company "rejected at least three proposals by the [u]nion to incorporate manning practices into the 1979, 1982, and 1985 agreements." <u>Id.</u>   The court further found that the company "also previously made manning changes that the Union never grieved to arbitration." <u>Id.</u>  Accordingly, it was improper for the arbitrator to

"direct[] the outcome of the negotiation," as the arbitrator should have only directed the parties to bargain. Id. at 1083.

The CBA here contains provisions which ambiguously discuss the Arbitrator's authority to decide the subject wage dispute. The Company has not proffered evidence that it ever rejected the possibility of such arbitral authority. Similarly, the record does not indicate that the Company and the Union have bargained to an impasse, or not bargained at all, after the Company violated Section 3.20. Phoenix Newspapers is thus distinguishable.

The Company also cites Centralab, Inc., Fort Dodge, Iowa v. Local No. 816, International Union of Electric, Radio and Machine Workers of America, 827 F.2d 1210 (8th Cir. 1987), where the Eighth Circuit affirmed the district court's order vacating part of an arbitration award which set new wages. Id. at 1211. Centralab is also distinguishable because there the agreement was silent as arbitral authority to determine wages. Id. at 1217. As previously discussed, the CBA, at a minimum, is ambiguous as to arbitral determination of wages, and as discussed further below, additional facts here support the conclusion that the Company authorized this arbitral authority.

The Union cites Desert Palace, Inc. v. Local Joint Executive Board of Las Vegas, 679 F.2d 789 (9th Cir. 1982), for support. There, a hotel changed its billing system such that servers received significantly less money in customer tips, at least partly based on customer bills no longer containing show prices or room prices. Id. at 791. After the hotel and the union submitted the matter to arbitration, the arbitrator found that the change in billing was a "special event" as provided under the parties' CBA, which entitled the servers to a portion of the proceeds of the show tickets. Id. The Company persuasively argues that Desert Palace is inapplicable because there the arbitrator only applied a contractual provision, as opposed to the present dispute, where the Arbitrator retained jurisdiction to determine the amount of the wage himself. (Doc. 54 at 16 n.8.)

In sum, although both parties contend that the CBA is clear (but with opposite interpretations), the CBA is ambiguous as to arbitral authority to determine amounts of Section 3.20 wages. As such, the Arbitrator's interpretation of his jurisdiction should be upheld. See, e.g., Contico, 738 F. Supp. at 1267.

**Presumption of Arbitrability**

When a CBA contains a broad arbitration clause, courts apply a presumption of arbitrability to all substantive disputes. <u>GKN Aerospace</u>, 431 F.3d at 627. This presumption applies "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." <u>Warrior & Gulf</u>, 363 U.S. at 582-83. Once the presumption attaches, it is difficult to overcome: "In the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where . . . the exclusion clause is vague and the arbitration clause quite broad." <u>Id.</u> at 584-85.

In <u>Granite Rock Co. v. International Brotherhood of Teamsters</u>, 130 S. Ct. 2847 (2010), the Supreme Court clarified the framework regarding the application of "the federal policy favoring arbitration." <u>Id.</u> at 2859 (internal quotations omitted). The Court explained, as discussed above, that "except where the parties clearly and unmistakably provide otherwise, it is the court's duty to interpret the agreement and determine whether the parties intended to arbitrate grievances concerning a particular matter." <u>Id.</u> (internal quotations omitted). The Court further explained that courts "discharge this duty by: (1) applying the presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and (2) adhering to the presumption and ordering arbitration only where the presumption is not rebutted." <u>Id.</u> at 2858-59.

As discussed above, neither party clearly and unmistakably excluded arbitral interpretation of the CBA. Thus, because the arbitration provisions in the CBA are ambiguous as to arbitral determination of the amount of the wage, the presumption of arbitrability is applied. Accordingly, this court must "adher[e] to the presumption and order[] arbitration" unless the Company rebuts the presumption. <u>Id.</u>

Section 3.01(*l*) is an "express provision excluding a particular grievance from arbitration," <u>Int'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines, Inc.</u>, 829 F.2d 658, 660 (8th Cir. 1987), which would normally greatly weaken, if not defeat the presumption of arbitrability. <u>Centralab</u>, 827 F.2d at 1215. However, as discussed

above, Section 3.01(*l*) itself is not entirely clear as to whether it excludes arbitral determination of the amount of the wage, Section 3.01(b) is a broad grant of arbitral authority, and portions of Section 3.20 imply that such arbitral authority is granted.

Thus, the presumption of arbitrabilty is applicable, but weakened.

**Clear and Unmistakable Waiver Doctrine**

Although the parties dispute whether the clear and unmistakable waiver doctrine applies to employers in an arbitration context, such a determination is not necessary because the Company clearly and unmistakably waived its statutory labor policy protections.[6]  Although the CBA is ambiguous as to arbitral authority to determine the amount of the wage, the parties submitted the task of determining the amount of the wage to the Arbitrator in the issues presented to the Arbitrator at the hearing.  (Doc. 47-5 at 1.)  As such, the Company clearly and unmistakably waived any relevant statutory protections.

**Prior Arbitral Interpretations of CBA Section 3.20**

In 2006, the Company and the Union had a similar dispute to the case at bar.  (Doc. 47, Ratterman Aff. at ¶ 17.)  There, the Company and the Union disagreed over whether the addition of computer duties to a job classification constituted a "substantial change" for Section 3.20 purposes, thus necessitating wage negotiations.  (Doc. 46 at 7.)  The arbitrator found in favor of the Union, and the arbitrator's award read:

> The Company is directed to negotiate with the Union over a pay increase for the subject classification.  The Arbitrator will retain jurisdiction in the event the parties are unable to agree on the amount of the wage increase.

---

[6]The Company points to the Supreme Court's statement in Metropolitan Edison Co. v. National Labor Relations Board, 460 U.S. 693, 708 (1983), where the Court held that it "will not infer from a general contractual provision that *the parties* intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.'  More succinctly, the waiver must be clear and unmistakable." Id. at 708 (emphasis added).  The Union argues that this standard is limited to unions, and does not apply to interest arbitration or contractual provisions permitting arbitral determination of wages. (Doc. 53 at 13-14.)  The argument is moot because, as discussed above, even assuming this standard does apply, the Company's waiver was clear and unmistakable.

(Id. at 7-8.)   The Union contends that this prior arbitral interpretation of Section 3.20 is relevant to interpret Section 3.20. (Doc. 46 at 7-8; Doc. 53 at 8-9.)[7]   The Company argues that the 2006 award is not relevant because the parties ultimately negotiated the amount of the wage themselves, and so the arbitrator's retention of jurisdiction was neither challenged nor employed.  (Id.)

In Trailways Lines, Inc. v. Trailways Inc. Joint Council, 807 F.2d 1416 (8th Cir. 1986), the Eighth Circuit considered the effect of a prior arbitration award on subsequent identical arbitrations.   There, two groups of employees in the same union filed grievances against their employer, challenging the employer's ban of employee beards.  Id. at 1418.   The first arbitrator found in favor of the employer, but the second arbitrator found in favor of the union, explaining that the earlier arbitration award was a minority view.  Id. at 1418-19.   The company subsequently filed suit to set aside the second award, and the district court granted the company summary judgment.  Id. at 1419.   The Eighth Circuit affirmed.  Id. at 1426.  The Eighth Circuit explained in dicta that "[a]lthough an arbitrator generally has the power to determine whether a prior award is to be given preclusive effect, . . . courts have recognized that the doctrine of res judicata may apply to arbitrations with strict factual identities."   Id. at 1425 (internal citations omitted).  The court further explained that prior arbitration awards of identical facts and issues become "a binding part of the agreement and will be applied by arbitrators thereafter."  Id. (quoting Elkouri & Elkouri, How Arbitration Works 425 (4th ed. 1985)).  The court expanded: "[W]here a prior decision involves the interpretation of the identical contract provision, between the same company and union, every principle of common sense, policy, and labor relations demands that it stand until the parties annul it by a newly worded contract provision." Id. (quotations omitted).[8]

_____

[7]Two different arbitrators granted the 2006 award and the disputed award in the case at bar.   The 2006 award, which the Union argues gave the Company notice of the scope of Section 3.20, was issued by Gerald Fowler.  (Doc. 24-1.)  The 2009 award was issued by Josef Rohlik.  (Doc. 12 at ¶ 12.)

[8]The court recognized three situations which would warrant an arbitrator's deviation from prior arbitration awards.  Id. at 1425 n.16
(continued...)

Although the scope of arbitral jurisdiction was not at issue in
<u>Trailways Lines</u>, the force of the holding is even more applicable in the
case at bar. As in <u>Trailways Lines</u>, the previous arbitration award
between the Company and the Union involved identical contract provisions
– the arbitral authority to determine the amount of a wage; was between
the same company and union; and the parties were represented by the same
counsel in both arbitrations. (Doc. 46 at 7; Doc. 47, Ratterman Aff.
at ¶ 17); <u>Trailways Lines</u>, 807 F.2d at 1425. Unlike <u>Trailways Lines</u>,
however, the Arbitrator *followed* the prior arbitration award.

This holding is consistent with decisions in other circuits as
well. <u>See, e.g.</u>, <u>Oil Workers Int'l Union v. Ethyl Corp.</u>, 644 F.2d 1044,
1050 (5th Cir. 1981) (adopting a "substantially similar" test for the
preclusive effect of prior arbitration awards). Even if, *arguendo*,
arbitrators are not bound by prior arbitral determinations, as some
circuits have held, <u>see, e.g.</u>, <u>Int'l Union v. Dana Corp.</u>, 278 F.3d 548,
555-56 (6th Cir. 2002) ("Other circuits have held that the preclusive
effect of an earlier arbitration award is a determination to be made by
the arbitrator") (citing <u>Bhd. of Maintenance of Way Emps. v. Burlington
N. R.R. Co.</u>, 24 F.3d 937, 940 (7th Cir. 1994); <u>Gen. Comm. of Adjustment,
United Transp. Union, W. Md. Ry. Co. v. CSX R.R. Corp.</u>, 893 F.2d 584,
593 n.10 (3d Cir. 1990); <u>Courier-Citizen Co. v. Boston Electrotypers
Union</u>, 702 F.2d 273, 280 (1st Cir. 1983); <u>Hotel Ass'n of Washington
D.C., Inc. v. Hotel & Rest. Employees Union</u>, 963 F.2d 388, 390 (D.C.
Cir. 1992)), the Arbitrator *followed* the prior arbitrator's
interpretation of arbitral jurisdiction between the parties. The
Arbitrator's actions were also consistent with the Section 3.01(k) of
the CBA. (Doc. 47-2 at 13.)

In sum, because the 2006 arbitration award provided for arbitral
determination of the amount of the wage, the Company did not object to
the retention of jurisdiction, and the facts surrounding the 2006
arbitration award are similar to the current arbitration award, the 2006
arbitration award supports the Arbitrator's interpretation of Section
3.20 and corresponding retention of jurisdiction.

---

[8](...continued)
(quoting Elkouri & Elkouri, <u>How Arbitration works</u> 428 (4th ed. 1985)).
Because the Arbitrator followed, did not deviate from, the prior
arbitral award, none of these situations are applicable to the case at
bar.

**Arbitration Hearing**

"There is growing consensus in the circuits, including [the Eighth Circuit], that the parties may impliedly consent, outside the express terms of the CBA, to arbitration. <u>Franklin Elec. Co.</u>, 886 F.2d at 191. The Eighth Circuit has since explained that "[o]nce the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbiter, [the court] must look *both to their contract and to the submission of their issue to the arbitrator* to determine his authority." <u>John Morrell & Co. v. Local Union 304A of the United Food and Commercial Workers</u>, 913 F.2d 544, 561 (8th Cir. 1990) (citations omitted). This rule is consistent with those in other circuits. <u>See Schoenduve Corp.</u>, 442 F.3d at 732 ("The scope of the arbitrator's authority is determined by the contract requiring arbitration as well as by the parties' definition of the issues to be submitted in the submission agreement."); <u>Local 1199, Drug, Hosp. & Health Care Emps. Union v. Brooks Drug Company</u>, 956 F.2d 22, 25 (2d Cir. 1992) ("[T]he scope of authority of arbitrators generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission.") (quotations omitted); <u>Int'l Chemical Workers Union v. Mobay Chemical Corp.</u>, 755 F.2d 1107, 1110 (4th Cir. 1985) ("The submission is the source and limit of the arbitrator's power.") (internal quotations omitted); <u>Hollern v. Wachovia Securities, Inc.</u>, 458 F.3d 1169, 1174 (10th Cir. 2006) ("The parties may extend [arbitral] authority, however, in their submissions to the arbitrators so long as the submissions do not violate an express provision of the original arbitration agreement."); <u>United Indus. Workers, v. Gov't of the Virgin Islands</u>, 987 F.2d 162, 168 (3d Cir. 1993) ("The Union never objected to the arbitrator's authority to decide the dispute . . . . The Union's conduct demonstrates its unmistakable intent to arbitrate its dispute . . . .); <u>Jones Dairy Farm v. United Food and Commercial Workers Int'l Union</u>, 760 F.2d 173, 175 (7th Cir. 1985) ("If a party voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it."); <u>Superior Nat. Ins.</u>, 591 F.3d at 1178 ("The [arbitration] panel's authority extends to issues raised both explicitly and implicitly by the . . . contract and the arbitration demand submissions.").

Therefore, the Company's original joint submission of the issue of determining the amount of the wage to the Arbitrator expanded the scope of the Arbitrator's authority to determine the amount of the wage.

## Labor Policy

Although labor policy disfavors compelled agreements, 29 U.S.C. § 158(d), the Company cannot avoid arbitration by invoking these labor policy principles because it agreed to arbitrate the amount of the wage.

Thus, labor policy does not foreclose additional arbitration.

## Power to Remand to the Arbitrator

"Where an award is incomplete or ambiguous, courts may remand the award to the arbitrator who issued it." <u>Teamsters Local Union No. 688 v. U.S. Foodservice</u>, No. 4:08 CV 1609 CDP, 2009 WL 1657425, at *2 (E.D. Mo. June 10, 2009).

## VIII.  CONCLUSION

An appropriate judgment order is issued herewith sustaining in part and otherwise denying the Union's motion for summary judgment (Doc. 45), and denying the Company's motion for summary judgment (Doc. 52). Because the Arbitrator was authorized to retain jurisdiction to determine the amount of the wage, the court remands the dispute to the Arbitrator.


　　　　　　　　　　　　　　　　　　 /S/    David D. Noce
　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**


Signed on October 20, 2010.